## MILL CREEK & MINEHILL NAV. & R. CO. v. UNITED STATES.

(District Court, E. D. Pennsylvania.    November 22, 1917.)

### No. 3980.

1. UNITED STATES ⬉125—ACTIONS AGAINST—CONSENT TO BE SUED—CONDITIONS.

If the United States gives consent to the issuance of process against it, provided the process issues within a limited time after the claim for redress arose, this limitation is strictly a condition of the remedy given, and not a statute of limitation.

2. UNITED STATES ⬉136—ACTIONS AGAINST—PROCEDURE.

Judicial Code (Act March 3, 1911, c. 231) § 24, par. 20, 36 Stat. 1093 (Comp. St. 1916, § 991), which with certain exceptions gives the District Courts jurisdiction concurrent with the Court of Claims of suits on claims against the United States, prescribes no special method of procedure, and the District Courts may adopt the procedure established for the Court of Claims, or follow their established practice, in which case, for all purposes of procedure, the United States is to be regarded as is any other defendant, and may be brought in by summons served on the district attorney.

3. UNITED STATES ⬉133—ACTIONS AGAINST—LIMITATION—WHEN "SUIT BROUGHT"—"BROUGHT."

In a suit against the United States, under Rev. St. § 3327 (Comp. St. 1916, § 5950), to recover internal taxes alleged to have been erroneously or illegally collected, the suit is "brought," within the meaning of the provision limiting the time for bringing suit to two years after the cause of action accrued, when the summons subsequently served is issued.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Brought.]

At Law. Action by the Mill Creek & Minehill Navigation & Railroad Company, to the use of Philadelphia & Reading Railway Company, lessee, against the United States. Trial to court. Judgment for plaintiff.

Wm. Clarke Mason, of Philadelphia, Pa., for plaintiff.

Edwin S. Kremp, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

DICKINSON, District Judge. This cause is one of 13; the others being entitled Nos. 3982, 3984, 3986, 3988, 3990, 3992, 3994, 3996, 3998, 4000, 4002, and 4004 of the same sessions all of which can be disposed of by one ruling. There are in substance two defenses interposed between the plaintiff's demand and judgment. One goes to the merits of the demand, and the other to the legal merits of plaintiff's

---

right to redress at law, or, in other words, is a denial of plaintiff's right to the remedy invoked.

The previous experience of the cases in this court disposes of the first defense. The real question involved in the second is whether the plaintiff has lost its remedy through lapse of time—whether time operates to affect the remedy as one of the conditions upon which it is given, or operates through and by a statute of limitations. The distinction indicated, though important enough in itself and carrying at times important practical consequences, does not seem to be of practical value in the instant case.

A few general observations may clarify our view of the broad questions involved and thus enable us to get a clearer view of the narrower questions with which we are concerned. One of the propositions advanced by counsel for the United States is undoubtedly sound, and, as was to be expected, is admitted in all its fullness by counsel for defendant. The proposition is that the United States cannot be sued, except as it may consent, and the right to sue, when given, must be exercised in compliance with the terms and conditions of that consent. This immunity belongs to every sovereign, and is an obviously necessary principle of all governments. The lesser power cannot move the greater, and as all the power which the courts possess flows from the supreme governing power, it follows that the supreme power cannot be moved unless it moves of its own willingness. This immunity, however, flowing as it does from the attribute of sovereignty, does not belong to the individual taxgatherer. Whatever power he has flows from the law, and, if he asserts to the damage of any one a power which the law has not conferred upon him, he does a wrongful act, and the damage thereby done to another becomes a legal injury, for which the injured person has a legal right of redress against the wrongdoer. The right thus possessed is not conferred by any statute, but is a common-law right, which exists until it has been taken away or limited by statute. It is to be expected that, in the very practical art and business of governing people, individuals may exercise authority in the execution of laws which they honestly believe they possess, and may be in the performance of what they believe to be their duty in asserting a power which it may afterwards be found they did not lawfully possess. If they are made personally responsible for the consequences of acts done in the performance of a sense of duty, although a mistaken one, a moral claim upon the sovereign for indemnity at once arises and would be recognized. A like obligation to return moneys to which the sovereign had no just claim would also be recognized.

[1] The general situation as thus outlined has brought about two kinds of legislation. The one is embodied in a series of acts by which the United States has expressed its willingness and consent to be made a defendant in defined cases and has subjected itself to the process of the courts. The other kind of legislation has given recognition to the claims of governmental agents to indemnity for the legal consequences of official acts performed in good faith, and provision is made for their reimbursement by the return of any moneys which they as individuals may have been compelled to pay because of what was really an official

act, and actions against them are regulated. If the United States gives consent to the issuance of process against it, provided the process issues within a limited time after the claim for redress arose, this limitation is strictly a condition of the remedy given, and not a statute of limitations in bar of the action. The common-law right of action, however, to which we have adverted, being, as already observed, a right belonging to the plaintiff, exists until it is taken away by statute, and may be enforced at any time, unless and until it is barred by a statute of limitations. Such latter statutes, therefore, in reference to such common-law right of action are strictly and technically statutes of limitation, and, generally speaking, statutes of limitation which apply to other actions apply to these actions.

Recurring again to actions against the United States, the right to which did not belong to the plaintiff, except as given by statute, such actions may be brought and prosecuted in accordance with the conditions of the grant of the right, and with respect to the time within which they may be brought, the United States may, if Congress so disposes, be less indulgent to itself than to other defendants.

[2] This brings us to a consideration of the narrower questions involved, dependent upon a construction of the specific statutes upon the two subjects mentioned. In order that the occasion for the institution of these suits as they were instituted may be understood and appreciated, it should be premised that the payment of the taxes, which is the real subject-matter of these suits, was exacted by a collector who had gone out of office before the claims of the present plaintiffs had ripened into actions at law. The actions which were then brought were brought against his successor in office upon the mistaken theory that the acts of Congress relating to this phase of the subject gave a right of action against the incumbent of the office at the time the right was asserted. It was ruled otherwise in those cases. The plaintiff has abandoned its right of action against the collector for his wrongful act in exacting payment of taxes for which there was no lawful warrant, and is now exercising the privilege given it by other acts of Congress to institute an action against the United States itself as defendant.

This directs us to go at once to the statutes which are quoted as giving this privilege. Section 24 (20) of the Judicial Code (Comp. St. 1916, § 991) is one. It provides a method for the assertion of claims by suit against the United States, so far as concerns the District Courts, by conferring upon these courts, concurrently with the Court of Claims, jurisdiction of all claims against the United States (with some exceptions) which could be asserted by action if the United States were suable. It specifically prescribes no system of process to be followed by the District Courts, but the concurrence of jurisdiction with that of the Court of Claims would imply a sanction of like process, and the limitation provision in the statute carries a direct implication of the sanction of the writ of summons process. A condition of the situation, with respect to which Congress was legislating, pre-existent to the statute, may help us in construing it. The District Courts had already been constituted and had established methods of procedure and pro-

cess. Courts of Claims had no such existence, and, of course, no method of procedure. There was no practical necessity to enact a procedure system for the District Courts; there was such necessity to provide a system for the Court of Claims. There is room because of this for the inference (if there is verbal warrant for it in the act itself) that it was in accord with the will of Congress that the Court of Claims should follow the mode of procedure set forth in the act, but that the District Courts might follow their established practice, on adopt that established for the guidance of the Court of Claims. We think the above-mentioned provisions of the act sanction this construction of it.

Section 156 of the Judicial Code (Comp. St. 1916, § 1147) indicates the filing of a petition by limiting the time within which it must be filed. The limitation provision of the twentieth section indicates the commencement of an action and is consistent with the thought of the issuance of a writ of summons. As the time limitation is the same in each of these sections, the coincidence suggests these different modes of procedure and provides a limitation in each case, or, in other words, in effect provides that, if the action permitted to be brought is brought through and by the writ of summons process, the closing of time upon the action is marked by the impetration of the writ, but, if the petition procedure is followed, then the date of the filing of the petition marks the time limit. In still other words, there is standing ground for the construction that if the claim is prosecuted in the Court of Claims, the filing of the petition determines the question of whether the proceeding has been begun in time, but if an action be brought in the District Court by writ of summons, the question is to be determined by the date of the writ. Certain sections of the Tucker Act (Act March 3, 1887, c. 359, 24 Stat. 506 [Comp. St. 1916, §§ 1574–1578]), which remain unrepealed, are consistent with this view, inasmuch as they indicate (section 4) that the courts may adopt any appropriate form of procedure; (section 5) that certain proceedings shall be by petition, and (section 6) how the petition shall be served; (section 7) prescribing the duties of the courts; and (section 10) for the taking of appeals by the United States.

Sections 20 and 156 of the Judicial Code each give six years' time within which plaintiffs may assert their claims by legal process. Judged by these sections, the present actions were brought in time. There are, however, other statutes limiting the time within which suits may be brought against the United States. This other provision is expressed in R. S. § 3227 (Comp. St. 1916, § 5950), which prescribes that no suit shall be maintained to recover payment of taxes collected without authority of law unless brought "within two years next after the cause of action accrued." Applying this provision to the instant cases, we find it has been complied with by the plaintiffs in each case if the issuance of a writ is a suit brought within the meaning of the Revised Statutes, but has not been complied with if the statements of claim are by this statute required to be filed within the two years.

[3] This brings us to the very narrow question involved here. That question is: Does the impetration of the writ toll the statute above

quoted (if viewed as a statute of limitations), or is the issuance of the writ a compliance with the terms and conditions upon which the right of action is conferred (if viewed as a condition of the exercise of the right given)? The question arises out of this state of the record and this state of facts: The plaintiffs "brought suit," or claim to have done so, by the filing a præcipe upon which issued a writ of summons in accordance with the established practice of the courts in like suits against individuals. These writs were served, or asserted by the plaintiffs to have been served, by lodging them with the district attorney. This was within the two-year period. Had statements of claim, or at least a petition setting forth the statement of claim, been filed within the like period, the question now raised would not have arisen. The plaintiffs, however, in each case deferred the filing of the statements of claim until after the expiration of the two years. The district attorney, denying, or at least doubting, his authority to recognize service of the writs upon him as bringing the United States as a defendant within the jurisdiction of the court, refused to view the United States as being in court. When a statement of plaintiffs' claim, however, was served upon him, the district attorney recognized that this was lawful service upon the United States and brought it into court as a defendant. In the view of counsel for the United States, the service of the statement was in law the commencement of the proceeding, and that no suit had been "brought" until this statement was filed. As this was more than two years after the cause of action arose, the position of counsel for the United States is that the plaintiff in each case has lost its right of action.

It is with something like a feeling of regret with which we reach a judgment which denies at this time a source of revenue to the United States. The exigencies of the conflict in which our people are engaged give the sanction of duty to an attitude of the closest scrutiny of all claims against the United States and of all claims to exemption from the common duty of service; but it would not justify the denial of a legal right, or even the entertaining of any feeling of regret in according that right, when once found to exist, nor does the assertion of such a right afford a basis for any just criticism of a litigant to whom such right belongs.

We are unable to get our mind in accord with the thought upon which this defense rests. Our view is that jurisdiction is given to the District Courts to determine the justness of claims against the United States, and that for all the purposes of procedure the United States is to be regarded as is any other defendant. It cannot, of course, be made a defendant without its consent; but, when that consent is once given, the merits of the claim for which the action is permitted to be brought are to be passed upon and determined as if the claim were made against any other defendant. Had the actions as brought been brought against a citizen, the action would have been found to have been brought in time, and the same finding must be made against the United States as a defendant. The ruling is not that a distinction could not have been made in favor of the United States, such as that for which counsel for the United States contends, but it is that no such distinction has been declared.

As all of the positions taken by counsel for the United States (except the denial that the issuance of a writ is the bringing of a suit within the meaning of the acts of Congress giving the District Courts jurisdiction of claims by actions against the United States) may be deemed well taken without affecting the conclusion reached, it is unnecessary for us to determine whether the two-year limitation applies to actions brought directly against the United States to recover excise taxes, the payment of which has been unjustly exacted, or only to those actions which have been brought indirectly against the United States through the Collector being made defendant. We think the judgment directed to be entered in these cases has the sanction of the approval expressed and implied in United States v. Greathouse, 166 U. S. 601, 17 Sup. Ct. 701, 41 L. Ed. 1130, and United States v. Emery, 237 U. S. 29, 35 Sup. Ct. 499, 59 L. Ed. 825.

It may not be out of place to make this additional statement with respect to the attitude and its effect of the United States district attorney and other counsel representing the United States toward the previous and present attempts of the plaintiffs to enforce the respective claims. The conduct of any defendant who throws procedure obstacles in the way of the plaintiff, instead of defending against the substantial merits of the complaint, is always deemed by the plaintiff to be ungracious and felt to be exasperating. Such a defense, however, it is the right of the defendant to interpose, and no law officer of the United States can, or, in this instance, has attempted to, do anything which could or has prejudiced this right in any degree. We state the situation thus broadly, as we do not understand the service of the writs to be in question, assuming the suits to have been properly instituted by the issuance of writs of summons, instead of by petition.

The request of the plaintiff for a finding in its favor is granted, and judgment in this case is accordingly rendered in favor of the plaintiff and against the United States for the sum of $553.61 as requested.